IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ASTLEY ANTHONY GRANT, | : | |
|     Petitioner | : | |
| | : | No. 1:22-cv-0331 |
| v. | : | |
| | : | (Judge Rambo) |
| WARDEN OF CLINTON | : | |
| COUNTY CORRECTIONAL | : | |
| FACILITY, | : | |
|     Respondent | : | |

## MEMORANDUM

Petitioner Astley Anthony Grant is currently being detained in the Clinton County Correctional Facility (CCCF) in the custody of United States Immigration and Customs Enforcement (ICE). Grant initiated the above-captioned *pro se* action by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. No. 1.) Grant alleges that his current civil detention is unconstitutional and seeks an order from this Court requiring the Government to show that Grant's removal is imminent or to establish that he is an "especially dangerous individual" such that his continued detention is permissible. (*See id.* at 26.) For the following reasons, the Court will deny Grant's Section 2241 petition.

I.  BACKGROUND

The following facts are undisputed by the parties. On March 19, 2000, Grant was arrested in Texas and charged with possession with intent to distribute approximately 2,675 kilograms of marijuana. (*See* Doc. No. 1 at 4); *United States*

*v. Grant*, No. 2:00-CR-00114, Doc. 1 (S.D. Tex. Apr. 12, 2000). Following conviction by a jury, Grant was sentenced to a term of 151 months' imprisonment, which sentence was later reduced to 120 months. *Grant*, No. 2:00-CR-00114, Docs. 19, 28, 45, 77. Grant completed his sentence on December 3, 2008, and was thereafter taken into custody by ICE based on an October 6, 2008 final order of removal citing Grant's aggravated felony drug conviction. (*See* Doc. No. 1 at 5; Doc. 6-3 at 2.)

Grant was removed from the United States to Jamaica on January 29, 2009. (Doc. No. 1 at 5; Doc. No. 6 at 2; Doc. No. 6-4 at 3.) He was also provided a standard written notice indicating that, due to his aggravated felony conviction, he was prohibited from reentering the United States at any time in the future. (*See* Doc. No. 6-4 at 4.)

Grant, however, did reenter the United States, although when and where that occurred is unknown. On January 4, 2019, he was arrested by Philadelphia Police Department officers and charged with aggravated assault, simple assault, reckless endangerment, and possession of an instrument of crime. (*See* Doc. No. 6-2 at 3.) This arrest triggered notification to ICE (via a "Biometric Hit") that Grant had reentered the country, likely without authorization. (*See id.*) Grant was subsequently charged with illegal reentry in violation of 8 U.S.C. § 1326(a) and (b)(2). *See United States v. Grant*, No. 2:19-CR-00428, Doc. No. 5 (E.D. Pa. July

25, 2019). On July 1, 2019, the Department of Homeland Security (DHS) reinstated Grant's previous removal order. (*See* Doc. No. 6-5 at 2.)

Grant eventually pled guilty to the illegal reentry offense and, on August 17, 2021, was sentenced to 37 months' imprisonment. *Grant*, No. 2:19-CR-00428, Doc. Nos. 17, 67. Grant completed this 37-month sentence on August 31, 2021, and was taken into ICE custody the same day based on the reinstated order of removal. (Doc. No. 1 at 6; Doc. No. 6-7 ¶ 2.) He remains in ICE custody at CCCF awaiting removal. (Doc. No. 1 at 6; Doc. No. 6 at 3.)

According to Respondent, a travel document request package was sent to the Embassy of Jamaica on October 13, 2021, to facilitate Grant's removal to Jamaica. (*See* Doc. 6-7 ¶ 6.) Additionally, ICE Enforcement and Removal Operations has requested assistance from Removal and International Operations to secure travel documents for Grant from the Embassy of Jamaica. (*Id.*)

Grant filed the instant Section 2241 petition in March 2022, when he was approximately six months into his current ICE detention. (*See generally* Doc. No. 1.) His petition raises numerous claims attacking his detention and prior convictions. The petition is fully briefed and ripe for disposition.

## II. DISCUSSION

Grant's Section 2241 petition is lengthy and difficult to follow. At times he appears to challenge the legality of his current ICE detention, and at other times he

attempts to impugn aspects of his former criminal convictions. Although his claim regarding the constitutionality of his continued detention pending removal is cognizable in a Section 2241 petition, his collateral attacks on his prior convictions are not.

Section 1231(a) of Title 8 of the United States Code[1] "governs the detention, release, and removal of individuals 'ordered removed.'" *Johnson v. Arteaga-Martinez*, 596 U.S. __, __, 142 S. Ct. 1827, 1832 (2022). Section 1231(a)(1)(A) provides that, following entry of a final order of removal, the United States generally must effectuate the noncitizen's removal during a 90-day "removal period." 8 U.S.C. § 1231(a)(1)(A). That 90-day period begins to run, for noncitizens who are detained or confined for criminal offenses, on "the date the alien is released from [non-immigration] detention or confinement." *Id.* § 1231(a)(1)(B)(iii). Detention is mandatory during this first 90 days. *Id.* § 1231(a)(2) ("During the removal period, the Attorney General *shall* detain the alien." (emphasis added)).

Following expiration of the 90-day removal period, certain noncitizens "may" be detained if they fall into one of four distinct categories: "(1) those who are 'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specified grounds; (3) those [determined] 'to be a risk to the community';

---

[1] Grant does not dispute that his detention falls under Section 1231(a)(6). (*See* Doc. No. 1 at 9 (citing Section 1231(a)(6) and *Zadvydas v. Davis*, 533 U.S. 678 (2001)); *id.* at 10 ("Petitioner is detained pursuant to 8 U.S.C. § 1231(a)(6)").)

and (4) those [determined] to be 'unlikely to comply with the order of removal.'" *Arteaga-Martinez*, 596 U.S. at __, 142 S. Ct. at 1832 (quoting 8 U.S.C. § 1231(a)(6)). How long a noncitizen may be detained pursuant to Section 1231(a)(6) following the 90-day removal period has been the subject of considerable litigation.

In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court held that Section 1231(a)(6) "does not permit indefinite detention," but rather "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." *Zadvydas*, 533 U.S. at 689. Of course, the phrase "a period reasonably necessary to bring about that alien's removal" provides no easily ascertainable guidelines. *See Arteaga-Martinez*, 596 U.S. at __, 142 S. Ct. at 1836 (Thomas, J., dissenting); *see also Guerrero-Sanchez v. Warden York Cnty. Prison*, 905 F.3d 208, 223-24 (3d Cir. 2018), *abrogated on other grounds by Johnson v. Arteaga-Martinez*, 596 U.S. __, __, 142 S. Ct. 1827 (2022).[2]

---

[2] In *Johnson v. Arteaga-Martinez*, the Supreme Court abrogated the Third Circuit's holding in *Guerrero Sanchez* that Section 1231(a)(6) presumptively "requires the Government to offer detained noncitizens bond hearings after six months of detention in which the Government bears the burden of proving by clear and convincing evidence that a noncitizen poses a flight risk or a danger to the community." *Arteaga-Martinez*, 596 U.S. at __, 142 S. Ct. at 1830. The Court did not address the merits of the petitioner's individualized Due Process Clause challenge or hold that such a claim could not be pursued. *See id.* at 1834-35. Moreover, the United States reassured the *Arteaga-Martinez* Court that "as-applied constitutional challenges" to prolonged detention under Section 1231(a)(6) "remain available." *Id.* at 1835.

Thus, noncitizens detained under Section 1231(a)(6) past the six-month presumptively constitutional period may bring an as-applied Due Process Clause challenge to their continued detention should that detention become prolonged and potentially unlawful. *See Zadvydas*, 533 U.S. at 699-701; *Guerrero-Sanchez*, 905 F.3d at 225; *see also Johnson v. Guzman Chavez*, 594 U.S. __, __, 141 S. Ct. 2271, 2281-82 (2021) (citing *Zadvydas*, 533 U.S. at 678, 689, 701). If the noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must either rebut that showing or release the [noncitizen]." *Guzman Chavez*, 594 U.S. at __, 141 S. Ct. at 2282 (internal quotation marks omitted); *see also* 8 C.F.R. §§ 241.4, 241.13 (establishing agency procedures for determining whether noncitizens detained under 1231(a) past 90-day removal period should be released on supervision or remain in detention).

Grant argues that there is "good reason to believe" that his removal will not occur in the reasonably foreseeable future because "the Government (Respondent) has too many constitutional violations to overcome." (Doc. No. 1 at 11.) Grant proceeds to attempt to collaterally attack his prior convictions and to question whether the Government has proven that he is an "alien." (*See id.* at 12, 18-20, 22-23.) This contention—that the United States has never properly established that Grant is a citizen of Jamaica or a noncitizen of the United States—appears

throughout Grant's petition and is weaved into nearly all his claims. (*See id.* at 8, 11, 12, 13, 16, 17-18, 19, 20, 21, 23, 25.)

Respondent asserts that Grant has not made a showing that his detention has become unconstitutionally prolonged or unreasonable. Respondent notes that, on March 11, 2022, ICE reviewed Grant's detention pursuant to 8 C.F.R. § 241.4(e), (f), and (g). (*See* Doc. No. 6-8 at 2.) The reviewing Unit Chief found that, as the United States was working with the Government of Jamaica to secure a travel document for Grant, his removal was reasonably foreseeable and thus denied Grant release from ICE custody. (*See id.*) Six days later, Grant was provided a bond hearing, pursuant to the then-controlling requirements of *Guerrero-Sanchez*, in front of an immigration judge at the request of the Government. (*See* Doc. No. 6-9 at 2.) At this hearing, Grant "knowingly and voluntarily requested no bond" and sought time to consult an attorney. (*Id.*) According to Respondent, Grant has not requested another bond hearing to date.

Under the facts of this case, it is plainly evident that Grant's detention under Section 1231(a)(6)—which now stands at approximately 11 months—has not become unconstitutionally prolonged. The United States is actively working to obtain travel documents to effectuate Grant's removal to Jamaica. Grant has received both agency review under 8 C.F.R. § 241.4 and the opportunity to challenge his continued detention before a neutral Immigration Judge. Grant may seek review

7

with ICE again if he believes that there is a "change in circumstances" that warrants review of his detention before the scheduled annual review that will take place in early 2023. *See* 8 C.F.R. § 241.49(k)(2)(iii). Grant, in fact, does not seek immediate release from detention as habeas relief. Rather, he requests that this Court enter an order requiring the Government to show that he is an alien whose removal is imminent or that he is "an especially dangerous individual." (Doc. No. 1 at 26.) This is the type of review explicitly provided by 8 C.F.R. § 241.4.

The crux of Grant's argument involves his repeated assertion that the United States has never established that he is a citizen of Jamaica or an alien. He specifically points to correspondence from the "Registrar General & Deputy Keeper of the Records," which appears to be a Jamaican agency, indicating that a search of the country's relevant database could not find a birth certificate for Grant. (*See* Doc. No. 1-4 at 2.) Notably, however, Grant never states what country he *is* a citizen of. He merely claims that the United States has not carried its burden to establish that he is a citizen of Jamaica or an alien. Moreover, it does not appear that Grant ever raised an alienage challenge at the time of his first deportation to Jamaica or during his criminal proceedings for violating 8 U.S.C. § 1326. He further avers that, during a withholding of removal credible-fear interview, he denied having any fear of returning to Jamaica. (Doc. No. 1 at 6-7.)

If Grant is attempting to challenge his prior convictions or his order of removal on the basis that the Government has not established that he is an alien, he cannot do so in a Section 2241 petition. A collateral attack on his previous conviction under 8 U.S.C. § 1326 must be made through a motion pursuant to 28 U.S.C. § 2255 in the district court where he was convicted and sentenced. *See Okereke v. United States*, 307 F.3d 117, 120 (3d Cir. 2002) (explaining that a Section 2255 motion is "the presumptive means" to challenge a federal conviction or sentence that allegedly violates the constitution). However, such a collateral attack would be severely circumscribed by 8 U.S.C. § 1326(d), which codified *United States v. Mendoza-Lopez*, 481 U.S. 828 (1987), and sets forth three criteria for challenging an underlying removal order in a Section 1326 criminal proceeding. *See* 8 U.S.C. § 1326(d); *United States v. Charleswell*, 456 F.3d 347, 351 (3d Cir. 2006).

As to Grant's 2008 final order of removal, any challenge to this order can be raised only in the appropriate court of appeals. *See* 8 U.S.C. § 1252(a)(5). This would include a claim that Grant is not removable because he is a United States citizen (although Grant has never explicitly made this claim). *See id.* § 1252(b)(5). However, a petition for review of a final order of removal must be filed "not later than 30 days after the date of" that order, *id.* § 1252(b)(1), making any challenge to Grant's 2008 final order of removal (or reinstatement of that order) untimely.

Finally, should Grant be found to argue that his removal is not reasonably foreseeable based on his newfound alienage challenge or other collateral attacks, the Court disagrees. The likelihood of success on a collateral attack on either his Section 1326 conviction or his underlying 2008 order of removal is extremely low for many reasons, not the least of which is that (1) these attacks are likely time-barred and (2) Grant has proffered no evidence (or even an allegation) regarding where his citizenship lies to counter the Government's determination that he is a citizen of Jamaica.[3]

In sum, Grant's claim that his continued detention under Section 1231(a)(6) has become unconstitutionally prolonged is meritless. Additionally, any collateral challenge he is attempting to raise based on alienage or some other defect[4] with his prior convictions is not cognizable in a Section 2241 petition in this Court. The Court will therefore deny Grant's habeas petition.

---

[3] *See, e.g.*, Doc. No. 6-1 at 3 (indicating that Grant entered the United States with a fraudulent passport in 1993 on a flight from Kingston, Jamaica, and that both of Grant's parents are citizens of Jamaica).

[4] Grant attempts to raise claims sounding in lack of probable cause, warrantless arrest, equal protection, and substantive due process to attack his previous convictions. (*See* Doc. No. 1 at 11, 15-17, 18-20, 21-23.) The Court will not address these claims because, as noted above, Grant's collateral attacks on his prior federal convictions are not cognizable in the instant Section 2241 petition.

## III. CONCLUSION

Based on the foregoing, the Court will deny Grant's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. An appropriate Order follows.

s/ Sylvia H. Rambo
United States District Judge

Dated: August 2, 2022